Rathmell, J.
The plaintiffs seek to enjoin the enforcement of and to have declared unconstitutional and void two ordinances: (1) No. 24929, to provide for the licensing of plumbers; (2) No. 23564, the licensing of sewer tappers.
The first ordinance provides for a board of examiners for master and journeyman plumbers, and exacts a license fee of $50 from master plumbers; and $5 from journeyman plumbers, the license being renewable annually for payment of a fee of $25 by the former and $5 by the latter. And it requires of master plumbers the execution of a bond of $3,000, conditioned to reimburse the city for actual damages caused by the act of the plumber to its property and to indemnify it against claims for damage, cost and expense on .account of negligence of the plumber.
The second ordinance exacts' a license fee of $5 annually and requires as a condition a bond in the sum of $500, conditioned that licensed party pay all damages done by the party to the property of the city .and to indemnify it against damages, cost and expense accruing to it in consequence of granting the license, and to restore to original condition the streets, pavements and sewer which may be opened.
*200 The first ordinance was passed December 13, 1909, and went in force January 1st, 1910; the second was passed October 21, 1907.
It is urged first that the ordinances are passed for purpose of revenue and not for regulation, and are therefore a tax and not a license.
The General Code (Sections 3616 and 3637) has conferred on the municipality the general power to license plumbers and sewer tappers. The objections are urged generally to the two ordinances in question. For convenience we shall consider first that affecting the sewer tappers.
A license exaction in a proper case may reasonably include the cost of issuing the license and the necessary or probable expense of inspecting and regulating the licensed occupation. And the exaction under the police power will be presumed by the courts to be reasonable, unless the contrary appears on the face of the ordinance imposing it, or it is established by proper evidence. (25 Cyc., 612.)
From the .outside sewer department, last year, while the present ordinance affecting sewer tappers was in force, the receipts from 122 licenses at $5 each .amounted to $610; and 1453 permits at $1 each yielded $1,453, a total of $2,063. The cost of supervision, one inspector, clerical hire and the necessary books amounted to $2,090.
It does not appear from the evidence that the sum demanded of this particular class of licenses exceeds the reasonable expense incident to issuing the licenses and permits and a reasonable compensation for a proper inspection and supervision of the licensed business. And the claim that the exaction is a tax and revenue measure is not well taken.
It is further contended that the ordinance is unreasonable in that it requires a bond of $500, conditioned that the licensee will pay all damages inflicted by the party or his agents 'on the property of the city; and to indemnify the city against damages, judgment, costs and expense which may accrue against it in consequence of granting the license; and .agree to restore to their *201 original condition streets, pavements and sewers which, may be opened or disturbed by the party.
Sewer tappers connect with the sewers in unpaved' streets and alleys, and may leave excavation therein or injure and clog the pipes in their connections. The city is responsible for the condition of the streets; and it is apparent that damages may result to the city’s property, and such liability may be incurred by the negligence of the licensee. We are unable to see that it is unreasonable that the city be protected against these matters; nor can we say the amount exacted is excessive in view of the injury which may probably result.
It is also contended that the ordinance is unfair and partial and interferes with trade and plaintiff’s right to engage in legitimate employment.
This contention finds an answer well stated in State v. Gardner, 58 O. S., 599, 605, 606. The natural right to labor is one of the rights which may be subject to reasonable regulation. If the legislation is appropriate to aeomplish the object sought, it can not be said that such regulation interferes with the natural right or unwarrantably prevents its exercise. The state may subject all occupation to a reasonable regulation when such regulation is required for the protection of public interests or the public welfare.
This in my judgment is not subject to the objection urged in the Gardner case. In the Gardner case, supra, the act under consideration specifically provided that the licensing of one member of a firm or the manager of the corporation should satisfy the requirements of the act. This was held to operate unequally. Here there is no such exemption. Each person engaging must obtain a license.
An abuse of issue by the board would not determine constitutionality. I am of opinion that the tappers ordinance in question is not open to the objection here urged against it, but is valid.
Coming now to the consideration of the plumbers ordinance No. 24929. A great many objections are urged against it. Among others that it discriminates — that it arbitrarily forms a *202 favored class in violation of Section 2 of the Bill of Rights, which guarantees equal protection and benefit.
The ordinance provides among other things for an examining board to examine master and journeyman plumbers who are applicants for licenses in certain things.
Section 9 exempts from examination any master plumber who, at the date of the passage of the ordinance, had been engaged in ■ the plumbing business for ninety days immediately prior thereto upon satisfying the examiner that he had been so engaged and that he had complied during said period with the former ordinances of the city relating to plumbers’ licenses; and any journeyman plumber who, at the date of the passage of the ordinance, had served his apprenticeship and was at that time a resident of the city, on satisfying the board that he had served his apprenticeship and was such resident.
This section confers the privilege of obtaining a license without examination on all master plumbers who immediately prior to the date of the ordinance had been engaged in the plumbing business in this city ninety days and should make a showing of those facts. And no matter how competent a master plumber may have been, if he had not been in said business in Columbus ninety days prior to said date he is denied the privilege of obtaining a license without an examination. And as to journeyman who at the date of the passage of the ordinance had served his apprenticeship and was a resident of the city and should make such showing to the board, he could have a license without an examination; but one who had served but was not a resident at that time must be examined. This section created a favored class both as to master and journeyman, arbitrarily in violation of said section of the Constitution. It discriminates in favor of masters who had been in business here ninety days; and of journeyman who at the date of the passage of the ordinance lived here. *
The same principle of discrimination was held to invalidate a statute providing for licensing engineers in the case of Harmon v. State, 66 O. S., 249, 254. Employment as an engineer for three years next prior to the passage of the act, upon showing of *203 the fact and verification of employer, entitled to license without examination. This provision was held arbitrary and unreasonable. Here engagement in the plumbing business for ninety days next before the passage of the ordinance in a certain place, affords, upon certain showing, exemptions from examination, and a license. It raises a favored class in precisely the same manner. I am unable to distinguish in principle.
But it is claimed here that the provision in the latter part of the section that advantage must be taken of the exemption provision within thirty days after the ordinance took effect, unless prevented by sickness or unavoidable cause, makes this an impractical consideration. France v. State, 57 O. S., 1, is cited and claimed as containing the same principle. There if a person could present a diploma of a proper kind, or was found to be a legal practitioner, after showing, it sufficed, but such showing of qualification appears to be quite different from the arbitrary distinction of engaging in business for a certain period or that of having a residence at a certain place.
And Theobald v. State, 10 C.C.(N.S.), 536, is cited in support of the contention that it is too late to make the challenge. The exception was made as to those holding licenses issued to them under a former act exempting them from examination during the period covered by such license first issued. That was a temporary matter since by the act they could not renew their licenses without examination under the new act. Here renewal could be obtained by those who have obtained licenses (and the record shows there are some) without an examination. The favor is continued and the matter not entirely temporary, hence a distinction.
We think the contention is not well taken that plaintiffs can not be heard because they might have taken advantage of the favor extended by Section 9. If the section arbitrarily forms a favored class of master plumbers and journeymen, as we have noted, then the ordinance does not afford equal protection and benefit; and it is difficult to say whether the ordinance would have been enacted independent of the provisions of this section. After the main enactment, the language of Section 9 is rather suggestive of condition, “Provided, however,” etc.
*204 Having reached the conclusion that the plumbing ordinance is invalid for reapís given, I deem it unnecessary to discuss the other questions raised as to same. Defendants enjoined from enforcing the plumbing ordinance as prayed for.